FILED IN CHARLESTON
U.S. BANKRUPTCY COURT

18 DEC 18 P 4:59

SOUTHERN DISTRICT
WEST VIRGINIA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEPHANIE ANN ANDERSON AND | ) | |
| GREGORY ALLEN ANDERSON | ) | |
| | ) | **BANKRUPTCY** |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |
| ARTHUR STANDISH, | ) | |
| | ) | |
| Trustee, | ) | |
| | ) | |
| v. | ) | **ADVERSARY PROCEEDING** |
| | ) | No.2:18-bk-20467 |
| STATE OF WEST VIRGINIA, | ) | Chapter 7 |
| *EX REL.* PATRICK MORRISEY, | ) | |
| WEST VIRGINIA | ) | |
| STATE ATTORNEY GENERAL | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Defendant, West Virginia Attorney General Patrick Morrisey, for this cause of action, states as
follows:

### Jurisdiction and Venue

1. Personal and Subject Matter Jurisdiction are conferred on this Court by 28 U.S.C.
   §§157 and 1334.

2. This matter is primarily a core proceeding and therefore the Bankruptcy Court has
   jurisdiction to enter a final order. However, if this case is determined to be a non-core

proceeding, then Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

3. All of the events or omissions giving rise to the claim occurred in the Southern District of West Virginia. Venue lies in this District pursuant to 28 U.S.C. §§ 1391, 1408, and 1409.

## Parties

4. Plaintiffs, Gregory Allen Anderson and Stephanie Ann Anderson (hereinafter "Plaintiffs" or "Debtors"), are natural persons and Residents of Tornado, Kanawha County, West Virginia, who own assets in Kanawha County, West Virginia, and are debtors under Chapter 7 of Title 11 of the United States Code.

5. Defendant, the State of West Virginia *ex rel.* West Virginia Attorney General Patrick Morrisey (hereinafter the "State" or "Defendant"), is a creditor of Plaintiff that represents the State of West Virginia and has authority to enforce the West Virginia Consumer Credit Protections Act, operating in West Virginia, including Kanawha County, and was properly listed as a creditor in this bankruptcy.

## FACTUAL ALLEGATIONS

6. Plaintiffs filed for bankruptcy on September 19, 2018 under Chapter 7.

7. Plaintiffs listed the judgment obtained by the Defendant on Schedule D of their bankruptcy Petition, but the Plaintiffs listed the amount of the judgment without interest, which has accumulated in the 20 months since the order was entered. The judgment was recorded and lien was placed on the Plaintiffs' real property at 108 Allen Court, Tornado, WV.

8. On September 28, 2016, the West Virginia Attorney General filed a complaint against Anderson's Handyman Service, Gregory Anderson, individually and as a manager of Anderson's Handyman Service, and Stephanie Anderson, individually and as a manager of Anderson's Handyman Service. (See Exhibit 1.) The complaint alleged that:

    a. Anderson's false promise that it would complete work is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as defined by W. Va. Code § 46A-6-102(7)(M);

    b. Anderson's also engaged in contracting to perform work for which it was not licensed, including building decks, excavating, electrical work, laying tile, painting, and plumbing. Anderson's failed to disclose that it was not licensed for such work, and contracting to do such work was an unfair and deceptive act or practice in violation of W. Va. Code § 46A-6-104, as defined by W. Va. Code § 46A-6-102(7)(M);

    c. Anderson's acceptance of payments from West Virginia consumers and then failing to substantially perform said contracts constitutes an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as defined by 142 C.S.R. 5-3.1.8;

    d. Anderson's failure to provide at least one of the consumers listed herein with a sufficient written contract – or a contract at all -- is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.1;

e.  Anderson's misled buyers as to the total project cost, which is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.22; and

f.  Anderson's contracted to perform work for which it received payment but never began. These are unfair and deceptive acts and practices that violate W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.1.

## ARGUMENT

The State argues that the $33,885.36 of the judgment and interest from the Agreed Order (Exhibit 2) and lien placed against the real property at 108 Allen Court in Tornado, WV, cannot be discharged in bankruptcy as the judgment was based on restitution for victims of fraud and unfair or deceptive acts or practices as well as fines owed to a state regulatory agency enforcing the statutes it is charged with enforcing.

### False Pretenses, False Representations, and Actual Fraud

The Defendant argues that the vast majority of the amount of the judgment in question cannot be dismissed because that amount is comprised of restitution for money the Plaintiffs took from consumers by false pretenses, false representations, and actual fraud. The complaint that led to the agreed order and judgment in this matter, which is attached, addresses the contracts that the Andersons entered into to do work that was beyond the limitations of their Contractor's License and then did not complete, leaving behind unfinished work that was not up to a standard of workmanship that is acceptable or would pass inspections. The Andersons deceptively hid their lack of appropriate licensure for the work they entered into contracts to perform, often claiming to be licensed to do work that was not covered by their provisional contracting license.

The Andersons claimed to be fully insured, which they were not for the majority of the time that they contracted to do home improvement work without appropriate licensures.

The Andersons also accepted money for work that was then not performed, not completed, and the work that was done was substandard work. The consumers who filed complaints with the Defendant's office often had repairs or completion estimates that were in excess of the original contract with the Andersons, as noted in the attached complaint (Exhibit 1). The Andersons also insisted on additional payments above the contract price to complete the work. (See Exhibit 1.)

The Defendant entered into a settlement with the Andersons, severally (and with the now-defunct Anderson's Handyman Service), in which only one fine would be assessed as along as restitution was paid for all parties not already litigated by other attorneys. In the event that the Andersons would have paid off the full amount of restitution within a year, the state was willing to cut the $5,000.00 penalty to $2,500.00. The Andersons did not pay the restitution at all, let alone within the first year, so the full amount of $30,300.00 is still owed, plus interest. The calculations on that interest are attached, which shows that the interest thus far totals $3,585.36. When this amount is added to the principal of the judgment, the new total owed is $33,885.36. (See Exhibit 3.)

The State argues that this debt is not dischargeable under §523(a)(2)(A) and (B) as this is money owed from false pretenses, false representation in both advertising and in the face-to-face-dealings with consumers, and actual fraud committed on consumers, as noted in the complaint attached, which is specifically addressed as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. §523(a)(2)(A) and (B). Notably, these are not just penalties, which would otherwise be paid only after allowed claims under 11 U.S.C. § 726(a)(1)-(3) because here the "penalty" is compensation for "actual pecuniary loss" on the part of the consumers for whom the Defendant sues for restitution in addition to a discontinuance of illegal practices by the Plaintiffs. Since the assets listed by the Andersons will be insufficient to cover the allowed claims under section 726(a)(1)-(3), it is important that $25,300.00 of this judgment is for pecuniary losses of consumers who entered into home improvement contracts with the Andersons. Although "penalties and the interest thereon are not in compensation for pecuniary loss and are not entitled to priority." In re Bates, 974 F.2d 1234, 1236 (10th Cir. 1992), the instant judgment contains $25,300.00 worth of consumer restitution for losses proven by receipts and canceled checks of consumers. Discharging that debt would be inequitable for the consumers deceived by the Andersons.

For these reasons, as further demonstrated in both Exhibits 1, 2, and 3, the Plaintiffs' debt from this judgment cannot be discharged, and specifically that the debt owed as restitution to affected consumers from the deceptive actions of the Andersons cannot be discharged in this action.

## Fines Owed to a Governmental Unit or Entity

There is also a fine of $5,000.00 owed to a state agency in the instant judgment that cannot be discharged in bankruptcy. Section 364(b)(4), also known as the "police power" exemption to the automatic stay, allows government actors to "remain unfettered by the bankruptcy code in the exercise of their regulatory powers." In re Commerce Oil Co., 847 F.2d 291, 295 (6th Cir. 1988). For that exemption to the stay apply, the actor in question must be a "governmental unit." 11 U.S.C. § 362(b)(4). The legislative history of section 362 shows that Congress intended the term "governmental unit" to be construed broadly. In re Arsi, 354 B.R. 770, 773 (Bankr. D.S.C. 2006). The West Virginia Attorney General most certainly qualifies as a "department, agency, or instrumentality carries (sic) out a governmental function." Id.

This exemption to the automatic stay has applied to "state bar disciplinary proceedings, employment discrimination actions labor law enforcement proceedings, rent regulation enforcement, the enforcement of minimum wage laws, enforcement of water quality control standards" and many other actions. Id. In In re Arsi, a South Carolina case, one of the debtor-spouses was a former member of the South Carolina bar. He had been disbarred after absconding with fees to which he was not entitled and incurred a penalty of approximately $353,000. The court held that regulation of the conduct of officers of the court could not be "more clearly within the police and regulatory exception" because it extends to the regulation of the practice of law and protects the public. Id.

In this instant scenario, the Andersons were the subject of an enforcement action from the West Virginia Consumer Credit Protection Act, which the Attorney General is tasked with enforcing. The resulting settlement represents both a reduced fine for the Attorney General's Office, and restitution to the consumers who were defrauded by the unfair or deceptive acts or practices the Andersons were accused of committing in the enforcement action. The Attorney

General reduced the fine in this matter from the statutory minimum $5,000 per violation for up to 25 violations to the statutory minimum of $5,000.00 for one violation in order to better facilitate the restitution payments to the consumers. The Attorney General even went so far as to settle for half the amount of that fine if the consumer restitution would be fully paid within one year. The restitution was not paid at all, so the fine is no longer discounted to $2,500.00 but the full $5,000.00.

Though the definition of "governmental unit" is to be construed broadly, whether the governmental unit is acting within its police or regulatory powers should be construed narrowly. In re Nortel Networks Corp., 426 B.R. 84, 91 (Bankr. D. Del. 2010). The courts have developed two tests to determine whether an action by a governmental entity is exempted from the automatic stay provision as an exercise of the entity's police power: the pecuniary purpose test and the public policy test. In re Commerce Oil Co., 847 F.2d at 296. Under the pecuniary purpose test, the courts focus on whether the action relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Id. Proceedings relating to matters of public safety are exempted from the automatic stay. Under the public policy test, the courts must distinguish between actions adjudicating private rights and those effectuating public policy. The latter are exempted. Id. at 295. The Supreme Court explained in Midland Nat. Bank that the automatic stay does not apply "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, *consumer protection*, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law." Midland Nat. Bank, 474 U.S. at 501 (emphasis added).

The judgment addressed in this Adversary Proceeding is the result of an action brought by the Attorney General of West Virginia under his enforcement powers of the West Virginia

Consumer Credit Protection Act, which is both highlighted and in bold print in the paragraph immediately preceding this. To further demonstrate why the Attorney General brought this action, Exhibit 4, the police report of Detective Charles Cook of South Charleston Police Department, is attached. Detective Cook found that the Andersons had obtained nearly $400,000.00 through false pretenses in the Kanawha Valley area. This is not just a matter of public policy, but a matter of protecting the consumers from false representations and unfair or deceptive acts or practices.

This applies to the full $33,885.36 and not just the fine for violating the West Virginia Consumer Credit Protection Act, as the restitution is addressed in <u>Midland Nat. Bank</u>.

### **PRAYER**

For the foregoing reasons, the Defendant, Patrick Morrisey, *ex rel* State of West Virginia prays that this court finds that the judgment granted to the Defendant and recorded as a lien on the real property owned by the Plaintiffs not be discharged in these proceedings and whatever additional relief this Court deems just and proper.

Melissa L. Starcher (WV State Bar # 9989)
Assistant Attorney General
Consumer Protection Division and
Antitrust Division

## **VERIFICATION**

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

    I, MELISSA L. STARCHER, ASSISTANT ATTORNEY GENERAL, being duly sworn, depose and say that I am the counsel of record for the Defendant, *State of West Virginia ex rel Patrick Morrisey* in the Adversary Proceeding in the foregoing styled civil action; that I am familiar with the contents of the foregoing Complaint; and that the facts and allegations contained therein are true, except such as are therein stated upon information and belief, and that as to such allegations I believe them to be true.

                    Melissa L. Starcher (WV State Bar # 9989)
                    Assistant Attorney General
                    Consumer Protection Division and
                    Antitrust Division

    Taken, subscribed, and sworn to before me in the County and State aforesaid this 18th day of December 2018.

    My commission expires April 13, 2020 .

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Peggy S. Means
Office of the Attorney General
PO Box 1789
Charleston, WV 25326-1789
My Commission Expires April 13, 2020

                    NOTARY PUBLIC

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA ex rel.**
**PATRICK MORRISEY,**
**Attorney General,**

        **Plaintiff/Petitioner,**

v.                                Civil Action No. <u>16-C-1488</u>

                                                Bloom

**ANDERSON'S HANDYMAN SERVICES LLC,**
**a West Virginia limited liability corporation;**
**GREGORY ANDERSON, individually and as a**
**manager of Anderson's Handyman Services LLC; and**
**STEPHANIE ANDERSON, individually and as a manager**
**of Anderson's Handyman Services LLC,**

        **Defendants/Respondents.**

---

## COMPLAINT AND PETITION FOR
## PRELIMINARY AND PERMANENT INJUNCTION

---

This action is brought pursuant to the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-1-101 *et seq.* (hereinafter "the Act"). Plaintiff/Petitioner, the State of West Virginia ex rel. Patrick Morrisey, Attorney General (hereinafter "the State") has reason to believe the above-named Defendants/Respondents, Anderson's Handyman Services LLC Gregory Anderson, and Stephanie Anderson, have violated the Act. The State brings this action to enjoin and restrain Defendants from engaging in unfair or deceptive acts or practices in contracting services of any kind. The State also seeks preliminary injunctive relief and other equitable relief including, but not limited to, restitution for consumers who were harmed by Defendants' business practices, court costs, investigative costs, attorneys' fees, and penalties of

**EXHIBIT**
**1**

Five Thousand Dollars ($5,000.00) for each violation of the Act.

## I.
## PARTIES

1.      The Plaintiff, the State of West Virginia, brings this action by and through Patrick Morrisey, Attorney General for the State of West Virginia. The Attorney General is authorized to bring this action pursuant to W. Va. Code §§ 46A-7-108, -110, and -111.

2.      Anderson's Handyman Services LLC is a West Virginia limited liability corporation with its principal place of business located at 108 Allen Court, Tornado, West Virginia.

3.      Gregory Anderson is a manager of Anderson's Handyman Services LLC and resides at 108 Allen Court, Tornado, West Virginia.

4.      Stephanie Anderson is a manager of Anderson's Handyman Services LLC and resides at 108 Allen Court, Tornado, West Virginia.

5.      Anderson's Handyman Services LLC is licensed by the West Virginia Contractor Licensing Board (License No. WV052145) to perform siding, roofing and flooring contracting services.

6.      Stephanie Anderson is the license holder for Anderson's Handyman Services LLC and performs only managerial duties for the corporation.

7.      Gregory Anderson, as a manager of the corporation, performs the contractor duties for the corporation.

8.      The Defendants engage in and/or have engaged in the business of contracting as defined by the West Virginia Contractor Licensing Act ("WVCLA"), W. Va. Code § 21-11-3(c), and the West Virginia Contractor Licensing Board's ("Board") Legislative Rule, 28 C.S.R. 2-3.9.

9.      The defendants, Stephanie Anderson and Gregory Anderson, jointly and

severally, controlled and made all decisions as to the policies, procedures and operations of Anderson's Handyman Service LLC, including, but not limited to, day-to-day operations.

10.     To adhere to the fiction of a separate existence between the defendants, Stephanie Anderson and Gregory Anderson and their company, Anderson's Handyman Services, would sanction fraud and promote injustice.

## II.
## JURISDICTION AND VENUE

11.     This Court has jurisdiction to hear this matter pursuant to Article VIII, Section 6 of the West Virginia Constitution and W. Va. Code § 51-2-2.

12.     Venue is proper in this Court pursuant to W. Va. Code §§ 46A-7-114 and 56-1-1.

## III.
## FACTS COMMON TO ALL CAUSES OF ACTION

13.     In 2015, the West Virginia Attorney General's Office ("Office") commenced an investigation of the business practices of Anderson's Handyman Services LLC, Gregory Anderson and Stephanie Anderson (hereinafter "Anderson's") after receiving a number of complaints from individuals and consumers that Anderson's had taken the consumers' money and had not finished the paid-for contractor services.

14.     Among the complaints received by the Office are those filed by Ralph and Kathy Davey, Tammy Brown, Nolan Carroll and many other consumers. In fact, at least ten other consumer complaints are known to this office at this time. The complaints of Ralph and Kathy Davey, Tammy Brown, and Nolan Carroll represent and illustrate the pattern of conduct that Anderson's Handyman Services, LLC engaged in.

**Ralph and Kathy Davey**

15.    Ralph Davey and Kathy Davey are residents of Scott Depot, Putnam County, West Virginia.

16.    On or about May 4, 2015, the Daveys hired Anderson's to build a sunroom and install the electrical work for the sunroom for Forty Six Thousand Dollars ($46,000.00), for which Ralph and Kathy Davey paid in full. A copy of the contract and invoice are attached hereto and incorporated collectively by reference herein as Exhibit 1.

17.    On or about May 11, 2015, the Daveys hired Anderson's to remove the existing concrete from the driveway, remove the support rails from the porch, install new concrete for the driveway and sidewalk in front of and behind the home with a wheelchair ramp, install rebar, crush and run, then install brown tile on the driveway, sidewalk, and porch, and install round columns on the front porch for Twenty Two Thousand Dollars ($22,000.00). A copy of the contract and invoice are attached hereto and incorporated collectively by reference herein as Exhibit 2.

18.    On May 20, 2015, the Daveys hired Anderson's on a third contract to extend the front porch by three feet, tile the new front porch, and extending the existing roof by three feet for Eight Thousand, Five Hundred Dollars ($8,500.00). A copy of the contract and invoice are attached hereto and incorporated collectively by reference herein as Exhibit 3.

19.    On May 5, 2015, the Daveys paid Anderson's Handyman Services, LLC Twelve Thousand Dollars ($12,000.00). A May 11, 2015 check to Anderson's Handyman Services, LLC was for Fifteen Thousand Dollars ($15,000.00). On May 12, 2015, the Daveys paid Anderson's Handyman Services, LLC an additional Twenty Two Thousand Dollars ($22,000.00). On May 20, 2015, the Daveys paid Anderson's Handyman Service $9,500.00 using a check from a credit

4

card. The balance on the contracts of $18,000 was to be paid upon work completion.

20.     The sunroom, which was the subject of the first contract, was improperly wired for electricity, bricks that cannot be replaced were cut out and not repaired,  the electrical receptacles are uneven, , there was a hole torn in the screen door by a worker,  soffit and fascia were removed and never replaced and garbage was left everywhere. Mr. and Mrs. Davey further state that the French doors do not open appropriately, and that the painting in that room is sloppy.

21.     The work under the first contract was inadequate and poorly done.

22.     There was no work begun on the second contract.

23.     There was no work begun on the third contract.

24.     Mr. and Mrs. Davey have not heard from Gregory or Stephanie Anderson since July of 2015, when Mr. Anderson promised that he would have workers go to the Daveys' house three evenings that week. No workers showed up that week or since.

25.     The Daveys requested their money back, and no response was received by the Daveys prior to their filing a consumer complaint or since.

26.     No representative of Anderson's Handyman Services, LLC told the Daveys that the Anderson's Handyman Services, LLC was only licensed for roofing, siding and flooring, and that it was not licensed for the work it contracted with the Daveys to perform under the three individual contracts.

**Tammy Brown**

27.     Tammy Brown is a resident of South Charleston, Kanawha County, West Virginia.

28.     On August 18, 2015, Ms. Brown hired Anderson's Handyman Services, LLC to

5

repair a roof and to build an addition onto her home. A copy of the contract and invoice are attached hereto and incorporated collectively as Exhibit 4.

29.     Ms. Brown received an estimate of Forty-Six Thousand Dollars ($46,000.00) for material and labor, with the excavation thrown in for free. The written contract called for an initial payment of Twenty-Five Thousand ($25,000.00) and additional payments as work was completed.

30.     Ms. Brown's mother paid Anderson's Handyman Service, LLC Twenty Five Thousand Dollars ($25,000.00) on August 18, 2015; Five Hundred Dollars ($500.00) on August 19, 2015; Six Hundred Dollars ($600.00) on August 20, 2015; Three Hundred Dollars ($300.00) on August 24, 2015; Four Hundred Dollars ($400.00) on August 31, 2015. On August 22, 2015, Gregory Anderson claimed that he had left Three Hundred Dollars ($300.00) in his truck and it was stolen, and could Ms. Brown replace that money so that he could buy supplies. She did so with the understanding that it would come off the end total. Ms. Brown's mother paid an additional Two Hundred Dollars ($200.00) for the delivery of the excavator when Charleston Auto delivered it because Mr. Anderson stated that he did not have any money on him. He offered to take this amount off of the final total, as well.

31.     Gregory Anderson would often show up in the evenings and keep working until 2:00 or 4:00 in the morning.

32.     Gregory Anderson left the job site frequently for hours at a time when he worked during the day.

33.     On September 2, 2015, Gregory Anderson began digging the footers for the addition to Ms. Brown's home. Gregory Anderson worked until 1:00 am on the excavating that day.

6

34.     Gregory Anderson excavated a different place for the driveway than the one originally discussed with Ms. Brown.

35.     When Gregory Anderson was asked by Ms. Brown's neighbor and Ms. Brown whether he had a building permit, Mr. Anderson stated that he did not have a building permit and later that he did not need a building permit because he was not building anything yet.

36.     September 8, 2015 was the last day that anyone from Anderson's Handyman Service, LLC worked at Ms. Brown's house.

37.     Ms. Brown attempted to cancel the contract with Anderson's Handyman Service by contacting Stephanie Anderson.

38.     Stephanie Anderson told Ms. Brown that the oral agreement between Ms. Brown and Mr. Anderson in which Mr. Anderson discounted the installation of flooring to One Thousand Dollars ($1,000.00), with Ms. Brown buying the flooring; and Five Hundred Dollars ($500.00) for the installation of baseboards had cost Anderson's Handyman money. Stephanie Anderson represented to Ms. Brown that the terms of cancellation would be different because of the floor installation and that Ms. Brown would have to speak with Gregory Anderson. Gregory Anderson dodged all telephone calls from Ms. Brown and Ms. Brown's mother, but Gregory Anderson did answer the phone calls when placed from the phones of other people.

39.     Anderson dug three to four feet deep footers and placed rebar, but left rebar sticking out, leaving the yard in a dangerous situation. In October, 2015, some of the walls of the footers fell in and water was standing in the footers.

40.     On or about October 6, 2015, Gregory Anderson came out to pump the water out of the footers, and went to Wal-Mart to get a sump pump. He returned and asked for money to buy a sump pump because he did not have the money to buy the pump. When this request for

7

additional money was declined, Mr. Anderson left again and returned with a mini-sump pump. Mr. Anderson pumped the water out of the footers and left, promising to return the next day. He has never returned.

41.    No representative of Anderson's Handyman Services, LLC told Ms. Brown that Anderson's Handyman Services LLC was only licensed for roofing, siding and flooring, and that it was not licensed for the work it contracted to perform for Ms. Brown.

42.    No one from Anderson's Handyman Services LLC has returned to complete this work since September of 2015 and no money has been refunded.

43.    There are three disabled adults living in this home.

### Nolan Carroll

44.    Nolan Carroll is a resident of Charleston, Kanawha County, West Virginia.

45.    On October 14, 2015, Mr. Carroll hired Anderson's Handyman Service, LLC to remodel a half bathroom in his Charleston home.

46.    Mr. Carroll paid Seven Hundred Dollars $700.00 up front to Anderson's Handyman Service, LLC.

47.    Gregory Anderson laid the tile flooring, installed the backsplash, painted, and installed the vanity.

48.    The work was poorly done, resulting in problems with the grout, the tiling, uneven flooring, improperly fixed drywall and splattered paint.

49.    Gregory Anderson worked until very late at night, and the Carrolls had to ask Mr. Anderson multiple times to leave. Finally, Mr. Anderson left at 12:30 am, leaving his phone and a check from another job on the table and taking off on foot.

50.    A representative of Anderson's Handyman Service, LLC returned to fetch all

8

tools and Mr. Anderson's belongings. Mr. and Mrs. Carroll told this employee that Gregory Anderson was not to return to the Carrolls' home.

51.     Stephanie Anderson called to apologize and arrived on November 10, 2015 with two workers to remedy the problems of a haze over the tiling caused by the grout, the improperly pieced together tile, the uneven flooring, the drywall not being fixed prior to painting, and the paint splattered in the bathroom.

52.     Problems remained even after Stephanie Anderson brought workers to remedy the problems. The flooring is still not level, there is a gap between the tile and the floor, the vanity has one foot not even touching the floor, the haze and paint splatters remain, the backsplash is chipped and the moulding around the toilet was cut with a chisel and looks bad. The recessed lighting was not installed properly and was caulked in place so that the light bulbs can never be replaced, and the drywall was still never finished before painting. Additionally, the wall cabinet was dragged up the wall and left scratches on the wall and paint was dripped onto the carpeting throughout the home and on the front door of the home.

53.     No representative of Anderson's Handyman Services, LLC told the Carrolls that the Anderson's Handyman Services, LLC was only licensed for roofing, siding and flooring, and that it was not licensed for the work it contracted with the Carrols to perform.

### General Course of Deceptive Conduct

54.     The Davey, Brown and Carroll complaints are illustrative of a pattern of conduct in violation of the Act, including, but not limited to the following:

      A.     Failing to meet agreed upon deadlines to complete services;

      B.     Leaving a project incomplete and requiring work to be finished by another contractor;

   C. Refusing to refund consumers' money for services not performed or performed inadequately;

   D. Willfully and repeatedly engaging in the conduct described in this complaint;

   E. Accepting money for work that is never performed;

   F. Contracting to perform work for which Anderson's Handyman Services, LLC is not licensed; and

   G. Failing to provide a written contract to a consumer for work that conforms to the requirements of the Home Improvement Act.

## FIRST CAUSE OF ACTION

 55. The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction.

 56. The Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

 57. The Act defines unfair methods of competition and unfair or deceptive acts or practices to include:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.

*See* W. Va. Code § 46A-6-102(7)(M).

 58. Anderson's false promise that it would complete work is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as defined by W. Va. Code

10

§ 46A-6-102(7)(M).

59.    Anderson's also engaged in contracting to perform work for which it was not licensed, including building decks, excavating, electrical work, laying tile, painting, and plumbing. Anderson's failed to disclose that it was not licensed for such work, and contracting to do such work was an unfair and deceptive act or practice in violation of W. Va. Code § 46A-6-104, as defined by W. Va. Code § 46A-6-102(7)(M).

### SECOND CAUSE OF ACTION

60.    The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction

61.    The West Virginia Home Improvement Act (the "Act") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

62.    The Act defines unfair methods of competition and unfair or deceptive acts or practices to include:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.

*See* W. Va. Code § 46A-6-102(7)(M).

63.    Anderson's is a "home improvement contractor" as defined by the Home Improvement Rule, 142 C.S.R. 5-2.7, and are thus subject to the provisions of the Home Improvement Rule, 142 C.S.R. 5-1, *et seq.*

64.    Anderson's acceptance of payments from West Virginia consumers and then

failing to substantially perform said contracts constitutes an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as defined by 142 C.S.R. 5-3.1.8.

## THIRD CAUSE OF ACTION

65.    The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction.

66.    The Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

67.    The Home Improvement Rule states:

> [i]n connection with any home improvement transaction, and without limitation by enumeration, it is an unfair or deceptive act or practice for any seller to: . . . Fail to provide the buyer a written contract, describing in a meaningful way, and in "plain language" as required by W. Va. Code § 46A-6-109, the goods or services purchased, the contract price. . .

*See* 142 C.S.R. 5-3.1.1.

68.    Anderson's failure to provide at least one of the consumers listed herein with a sufficient written contract – or a contract at all -- is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.1.

## FOURTH CAUSE OF ACTION

69.    The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction.

70.    The Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

71.    The Home Improvement Rules state that,

> [i]n connection with any home improvement transaction, and without limitation by enumeration, it is an unfair or deceptive act or practice for any seller to:  Mislead the prospective buyer into

12

> believing that the down payment or some other figure constitutes
> the full amount the buyer will be obligated to pay, or to omit or
> exclude any other obligations, fees, charges or costs to the buyer;

*See* 142 C.S.R. 5-3.1.22.

72.      Anderson's misled buyers as to the total project cost, which is an unfair or deceptive act or practice and violates W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.22.

### FIFTH CAUSE OF ACTION

73.      The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction.

74.      The Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

75.      The Home Improvement Rule states:

> [i]n connection with any home improvement transaction, and
> without limitation by enumeration, it is an unfair or deceptive act
> or practice for any seller to: . . . Fail to provide the buyer a written
> contract, describing in a meaningful way, and in "plain language"
> as required by W. Va. Code § 46A-6-109, the goods or services
> purchased, the contract price. . .

*See* 142 C.S.R. 5-3.1.1.

76.      Anderson's contracted to perform work for which it received payment but never began. These are unfair and deceptive acts and practices that violate W. Va. Code § 46A-6-104, as explained by 142 C.S.R. 5-3.1.1.

### IV.
### INJUNCTIVE RELIEF

77.      The State realleges and incorporates herein the foregoing allegations of this Complaint and Petition for Preliminary and Permanent Injunction.

78.     The Act, referenced in W. Va. Code § 46A-7-108 and 109, specifically provides for injunctive relief to prevent unconscionable agreements and fraudulent and/or unconscionable conduct.

79.     Anderson's engaged in practices that resulted in harm and/or were likely to result in harm to West Virginia consumers.

80.     It is necessary and essential to stop Anderson's from engaging in future contracting work in the State of West Virginia due to Anderson's willful, wanton, and flagrant unlawful practices to consumers.

81.     Wherefore, the State prays for relief and judgment against Defendants, jointly and severally:

A.     A prohibitory injunction against the defendants to prohibit them from engaging in contracting work and establishing a Five Thousand Dollar ($5,000.00) fine for each infraction thereof;

B.     A preliminary injunction without bond pursuant to W. Va. Code § 46A-7-110 prohibiting the defendants from transferring or conveying any real or personal property in their custody or control to any third party until this matter has been finally adjudicated.

C.     Restitution for consumers;

D.     An Order directing that Defendants pay for the State's reasonable attorneys' fees, expert witness fees, and other costs of this action; and

E.     An Order granting further relief, as the Court deems just and proper, to

which the State may be entitled.

Respectfully submitted:


STATE OF WEST VIRGINIA, ex rel.
PATRICK MORRISEY,
ATTORNEY GENERAL

By Counsel

_____
Melissa Leigh Starcher (WV State Bar No. 9989)
Assistant Attorney General
Office of the Attorney General of West Virginia
Consumer Protection/Antitrust Division
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone:  (304) 558-8986
Facsimile:  (304) 558-0184

## VERIFICATION

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

I, MELISSA L. STARCHER, ASSISTANT ATTORNEY GENERAL, being duly sworn,

depose and say that I am the counsel of record for the Plaintiff in the Complaint And Petition For

Preliminary Injunction and Permanent Injunction in the foregoing styled civil action; that I am

familiar with the contents of the foregoing Complaint; and that the facts and allegations

contained therein are true, except such as are therein stated upon information and belief, and that

as to such allegations I believe them to be true.

Melissa L. Starcher (WV State Bar # 9989)
Assistant Attorney General
Consumer Protection Division and
Antitrust Division

Taken, subscribed, and sworn to before me in the County and State aforesaid this 28th day

of September, 2016.

My commission expires _April 13, 2020_ .

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Peggy S. Means
Office of the Attorney General
PO Box 1789
Charleston, WV 25326-1789
My Commission Expires April 13, 2020

NOTARY PUBLIC

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
PATRICK MORRISEY,
**Attorney General,**

              **Plaintiff,**

**v.**

                                       **Civil Action No. 16-C-1488**
                                       **Judge Louis H. Bloom**

ANDERSON'S HANDYMAN SERVICES LLC,
a West Virginia limited liability corporation;
GREGORY ANDERSON, individually and as a
manager of Anderson's Handyman Services LLC; and
STEPHANIE ANDERSON, individually and as a
manager of Anderson's Handyman Services, LLC,

              **Defendants.**



---

## AGREED FINAL ORDER
## GRANTING JUDGMENT AGAINST DEFENDANTS

---

On this day came the State of West Virginia, ex rel. Patrick Morrisey ("the State"), by counsel Melissa Leigh Starcher, Assistant Attorney General, and Chris Carlson, Assistant Attorney General, and the Defendants, Anderson's Handyman Services LLC, Gregory Anderson and Stephanie Anderson ("Anderson"), by counsel, David P. Cook, Jr., and advised the Court that they have resolved their differences and the parties consent to the entry of this Agreed Order Granting Judgment.

The Court, after being fully advised, and upon due consideration of the terms and conditions of the parties' agreement, finds that the agreement is just and in accord with applicable law. Therefore, the Court states as follows:

EXHIBIT
2

Gregory Anderson and Stephanie Anderson are managers and owners of Anderson's Handyman Services LLC, which was licensed by the West Virginia Contractor Licensing Board (License No. WV052145). This license only allowed the business to perform siding, roofing and flooring contracting services.

Due to the number of consumer complaints filed with the Consumer Protection and Antitrust Division of the Attorney General's Office against Anderson, the State opened an investigation to determine if Anderson was violating the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, *et seq.*, (the "Act"), and the West Virginia Contractor Licensing Act, W. Va. Code § 21-11-3(c).

Based on the results of its investigation, the State filed suit against Anderson. The State alleged Anderson was paid to perform residential contracting work for consumers outside the scope of its license; failed to perform the services they were paid for or performed the services in an unworkmanlike manner; misled consumers by failing to provide consumers with sufficient written contracts; and that Anderson's Handyman required consumers to pay in excess of the original total project cost.

Without admitting to any allegations in the Complaint, Anderson agrees to settle this matter under the terms set forth below and for entry of this Order.

It is therefore ORDERED and ADJUDGED as follows:

1.      It is ORDERED that Anderson Handyman Services, LLC, Gregory Anderson and Stephanie Anderson, jointly and severally, shall pay the Attorney General the amount of $25,300.00 to be used for consumer restitution. To the extent there is money remaining after consumer claims have been paid, the balance shall be used to reimburse any costs associated with payment to consumers and the balance will go to the Attorney General and may be used by the Attorney General

*State ex rel. Morrisey v.*
*Anderson's Handyman Services, LLC*
Agreed Final Order

for any one or more of the following purposes: direct and indirect administrative, investigative, compliance, enforcement, or litigation costs and services incurred for consumer protection purposes; to be held for appropriation by the Legislature; and/or distribution to taxpayers and/or consumers.

2. It is ORDERED that Anderson Handyman Services, LLC, Gregory Anderson and Stephanie Anderson, jointly and severally, shall pay a civil penalty of $5,000.00 to the Attorney General's Office Consumer Protection and Anti-Trust Division. However, if Anderson pays the entire judgment amount within one year from the date of the entry of this Order, the civil penalty shall be reduced to $2,500.00. This amount paid as a civil penalty may be used by the Attorney General for any one or more of the following purposes: direct and indirect administrative, investigative, compliance, enforcement, or litigation costs and services incurred for consumer protection purposes; to be held for appropriation by the Legislature; and/or distribution to taxpayers and/or consumers.

3. It is ORDERED that Gregory Anderson and Stephanie Anderson are each enjoined from engaging in contracting work or handyman services in West Virginia until such time as either or both receives proper certification from the West Virginia Contractor's Licensing Board and proper registration with any other applicable agency. The defendants shall not engage in contracting work or handyman services in West Virginia until such time as all restitution, civil penalties, and any Division of Labor fines and penalties are paid in full.

4. It is further **ORDERED** that the parties shall bear their own costs and fees.

5. Other than such jurisdiction as is necessary to oversee implementation of the terms of this Agreed Order and enforcing the terms set forth herein, it is further ORDERED that this action is dismissed, with prejudice.

*State ex rel. Morrisey v.*
*Anderson's Handyman Services, LLC*
Agreed Final Order

The Clerk is directed to remove the matter from the Court's active docket and to send a

certified copy of this Order to counsel of record addressed to them as follows:  Melissa Leigh

Starcher, Assistant Attorney General, Consumer Protection and Antitrust Division,  P. O. Box 1789,

Charleston, WV 25326-1789 and David P. Cook, Jr., MacCorkle Lavender PLLC, P. O. Box 3282,

Charleston, WV 25332.


Entered this ____4____ day of ___April___, 2017.

HONORABLE LOUIS H. BLOOM, JUDGE
Circuit Court of Kanawha County

Prepared by:

MELISSA LEIGH STARCHER, ESQ. (WVSB No. 9989)
Assistant Attorney General
CHRIS CARLSON, ESQ. (WVSB No. 12726)
Assistant Attorney General
Consumer Protection and Antitrust Division
P.O. Box 1789
Charleston, WV  25326-1789
Telephone: (304) 558-8986
Counsel for the State of West Virginia ex rel. Patrick Morrisey


Approved for entry by:

DAVID P. COOK, JR. ESQ. (WVSB No. 9905)
MacCorkle Lavender PLLC
P.O. Box 3282
Charleston, WV  25332
Telephone: (304) 344-5600
                *Counsel for the Defendants*

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT.
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF    April 2017
                                    CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

4

*State ex rel. Morrisey v.*
*Anderson's Handyman Services, LLC*
Agreed Final Order

Post-Judgment Interest Calculator

Page 1 of 8

 (https://www.calculators.org/)

HOME (HTTPS://WWW.CALCULATORS.ORG/)   /   BUSINESS (HTTPS://WWW.CALCULATORS.ORG/BUSINESS/)   /   LEGAL JUDGMENT

f
(http://
u=http
3A%
2F%
2Fwww
2Fbusi
2Fjudg
Judgme
20Inte
20Calc

# 🖼 Post-Judgment Interest Calculator

# Legal Judgement 🔨 Calculator

This tool will help you estimate interest earned on a court-awarded judgment. First enter the total judgment amount awarded by the court.
Then input the date the judgment was awarded and the interest rate attached to the deposited judgment.

🐦
(http://
text=P
Judgme
20Inte
20Calc
3A%
2F%
2Fwww
2Fbusi
2Fjudg

Press CALCULATE, and you'll quickly see how valuable your judgment is. You'll get estimates of how much interest the judgment is earning
per day, the total interest accrued since the judgment date, and the total current value of the judgment.

📌

| Calculator | Savings |
|---|---|

Original judgment amount:        30300

Judgment date [month] [day] [4-digit year]:        04    04    2017

Annual interest rate (%):        7

Reset        Calculate

Interest per day:        $5.8110

Number of days since judgment date:        617

Total interest accumulated since judgment date:        $3,585.36

Total current value of judgment:        $33,885.36

**Put Your Money To Work Today!**

EXHIBIT
3

https://www.calculators.org/business/judgment.php

12/12/2018



# SOUTH CHARLESTON POLICE DEPARTMENT
### 4TH AVENUE & D STREET
### SOUTH CHARLESTON, WEST VIRGINIA 25303

Brad Rinehart, CHIEF OF POLICE
304-744-6903

EMERGENCY –911-
DETECTIVE BUREAU – 744-5951
FAX – 304-744-5307

Frank Mullens, MAYOR
304-744-5301

July 21th, 2016

TO: WV Department of Labor,
Ref: Contractor License #WV052145

On June 27th, 2016 I began an investigation involving Gregory Anderson and Stephanie Anderson who are the owners and operators of Andersons Handyman Service LLC. Rebecca Risko stated that she had paid Andersons Handyman Service $6,200 of a $9,500 contract to build a 35' x 35' deck who claimed that no work had been done. Ms. Risko also advised that the Andersons Handyman Service refused to refund any money and would not answer any calls. Ms. Risko provided a copy of the contract and a copy of the check. I located through the WV Division of Labor Contractor Licensing WV052145 (Anderson's Handyman Service LLC) which has a classification of [ I 009 010 027] . Contracting to build a deck would require the passing of a business and law examination of 083 (Deck) which was not part of this license as well as this contract would exceed the $2,500 limit of a handyman's contractor license according to WV state code. As result of my investigation I obtained arrest warrants for Gregory Anderson and Stephanie Anderson for 1 felony count for obtaining under false pretense. After the arrest I was contacted by several dozen victims who paid Andersons Handyman services. All of the victims stated Gregory Anderson and Stephanie Anderson represented their handyman contractor's license as a residence contractor license with all classifications and sub-contracted some electrical work with liability insurance. Some of the victims have paid large sums of money and had no work done. All of the victims have reported job site abandonment without legal excuse. Some of the partial completed jobs included electrical, plumbing, asbestos removal, masonry, decking, tile installation, foundation support systems, framing, window installation, drywall, siding, doors, fencing, painting, landscaping, demolition, floor covering and gutters. Many of the victims stated they had to hire other contractors to redo the work. Some of those required complete demolition of the work due to the incorrect materials or incorrect installation. I have also attached several contracts that I have received so far that have been completed by Anderson's Handyman Services that clearly shows the misrepresentation of their contractor's license as described throughout Chapter 21, article 11. These 24 jobsites compile for approximately $364,780 worth of contracted residential work which average $15,200 per job site. Gregory Anderson also stated that they do not have any insurance associated with the Anderson's Handyman Services. During the processing, interviewing and transportation of Gregory and Stephanie Anderson I advised them about the work that was allowed to be done on their current license. Since their arrest I have been informed that Andersons Handyman Service have showed up to jobsites and continue to do work outside of their license including one in Eleanor, WV where law enforcement had to be called. The Anderson's Handyman Services LLC's website which was also updated since the arrest states that they are licensed and insured to do residential and commercial work. I request that the licenses of Gregory and Stephanie Anderson be permanently revoked.

Detective C. A. Cook
South Charleston Police Department

EXHIBIT
4